\*NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
:
ABDUL QADIR,                            :    Civil Action No. 07-3741 (FLW)
:
        Plaintiff,              :
:
    v.                                    :
:               **OPINION**
ALBERTO GONZALES, Attorney General       :
of the United States, et al.,            :
:
:
        Defendants.             :
_____:

**WOLFSON, District Judge:**

    Plaintiff Adul Qadir ("Plaintiff"), a permanent resident of the United States who resides in the state of New Jersey, submitted his naturalization application with the Department of Homeland Security's Bureau of Citizenship and Immigration Services ("CIS") on April 27, 2006, and more than two years later, he still has not been scheduled for an interview on that application. Plaintiff brings this suit to compel the CIS to process his application or, in the alternative, remand the case to the CIS provided that FBI completes the background check within 180 days. In the instant matter, Defendants moves the Court to dismiss Plaintiff's Complaint for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1] For the reasons set forth herein, the Federal Defendants' motion is granted in part and denied in part. Specifically, Administrative Procedures Act ("APA") and

---

[1] The name defendants are as follows: Alberton Gonzales, former Attorney General of the United States; Michael Chertoff, Secretary Department of Homeland Security; Emilio Gonzales, Jr., Director, United States Citizenship and Immigration Services; John Thompson, New Jersey District Director of CIS; Robert s. Mueller, III, Director of the Federal Bureau of Investigation (collectively, "Federal Defendants").

Mandamus claims against the CIS are dismissed; however, these claims against the FBI survive the motion; and claims for declaratory judgment and due process are dismissed as to all the Federal Defendants.

**BACKGROUND**

The facts of this case are relatively straightforward and not disputed unless otherwise stated. Plaintiff is a lawful permanent resident of the United States. On April 19, 2007, Plaintiff filed a form I-90 for a replacement green card. As part of approving the I-90 replacement green card, an Interagency Border Inspection System Check was completed. The I-90 was subsequently approved on June 13, 2007. On April 27, 2006, Plaintiff filed an application for naturalization, Form N-400, with CIS, pursuant to § 316 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1427. Plaintiff's application is pending while background checks are being conducted. Such background checks include more than the initial I-90 security check.

The Federal Defendants have advised the Court that the naturalization process consists of five steps: (1) application; (2) background checks; (3) interview; (4) decision; and (5) oath of allegiance. Moreover, the naturalization process requires record checks against the immigration systems maintained by the Department of Homeland Security ("DHS") in its own databases; a fingerprint check by the Federal Bureau of Investigation ("FBI") for arrests and convictions; a check against the Interagency Border Inspection System ("IBIS"), which gathers information from various federal agencies; and a name check by the FBI against its own investigative databases containing information not necessarily discoverable through the name check alone. Pursuant to this process, the FBI name check was ordered on June 19, 2006, but it has not been done. Meanwhile, a

fingerprint check was done in June 2006, and since it is only valid for fifteen months, it has expired. To date, no interview for naturalization has been scheduled or completed.

Plaintiff files the instant Complaint alleging that the failure of CIS to schedule an interview on his naturalization application violates the Fifth Amendment. Plaintiff seeks review of this matter under the APA; 28 U.S.C. § 1361, the Mandamus Statute; and the Declaratory Judgment Act.

## DISCUSSION

### I. Standard of Review under Rule 12(b)(1)

The Federal Defendants move to dismiss the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. When jurisdiction is challenged pursuant to Rule 12 (b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction. Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Should factual issues arise regarding subject matter jurisdiction, the court may consider exhibits outside the pleadings. Id. Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id.

### II. Standard of Review under Rule 12(b)(6)

In reviewing a motion to dismiss on the pleadings, a Court must take all allegations in the Complaint as true, viewed in the light most favorable to the plaintiff. See Gomez v. Toledo, 446 U.S. 635, 636 n. 3 (1980); Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984). If no relief could be granted under any set of facts that could prove consistent with the allegations in the Complaint, the Court may dismiss the Complaint for failure to state

a claim. See Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).  Recently, in Bell Atlantic Corporation v. Twombly, the Supreme Court clarified the Rule 12(b)(6) standard. 127 S. Ct. 1955 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, 127 S. Ct. at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965. Thus, while a complaint does not need detailed factual allegations, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65.

**III.  Jurisdiction**

    A.    Jurisdiction under 28 U.S.C. § 1361

Section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  The Supreme Court has described mandamus relief under § 1361 as an "extraordinary remedy" which "will issue only to compel the performance of 'a clear nondiscretionary duty.'" Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988); see also Heckler v. Ringer, 466 U.S. 602, 616 (1984) ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty"); Work v. United States, 267

U.S. 175, 177 (1925) ("Mandamus issues to compel an officer to perform a purely ministerial duty" but "[i]t can not be used to compel or control a duty in the discharge of which by law he is given discretion"). The duty owed by the government must be "a legal duty which is a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.' An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt." Harmon Cove Condominium Assoc. v. Marsh, 815 F.2d 949, 951 (3d Cir. 1987) (citations omitted). A "party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable." Will v. United States, 389 U.S. 90, 96 (1967) (quotations omitted). As such, three requirements must be met before the Court can issue a writ of mandamus. Plaintiff must show (1) that he lacks another adequate remedy; (2) that the Federal Defendants owe him a duty to act; and (3) that he has a clear and indisputable right to relief sought. Mallard v. U.S. District Court for So. District of Iowa, 490 U.S. 296, 309 (1989); Heckler, 466 U.S. at 616.

      B.     Jurisdiction under the APA

"The APA does not provide an independent basis for federal jurisdiction." Elhaouat v. Mueller, No. 07-632, 2007 U.S. Dist. LEXIS 58906, at *3 n.5 (E.D. Pa. Aug. 9, 2007) (citing Califano v. Sanders, 430 U.S. 99, 107 (1977)). Jurisdiction for APA claim is based on federal question jurisdiction under 28 U.S.C. § 1331.

The APA provides for judicial review of agency action in certain limited instances. See 5 U.S.C. § 706. Specifically, it permits "[a] person suffering legal wrong because of agency action, or adversely affected by aggrieved by agency action within the meaning of a relevant statute" to seek judicial review of that action. 5 U.S.C. § 702. The definition of "agency action" explicitly includes "failure to act." 5 U.S.C. § 551(13). Under judicial

review, the reviewing court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Moreover, the APA includes a general requirement that "[w]ith due regard to the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

### 1.   Claims against the CIS

"Most of the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive." Han Cao v. Upchurch, 496 F.Supp. 2d 569, 575 (E.D. Pa. 2007) (citing Hernandez-Avalos v. I.N.S., 50 F.3d 842, 884-45 (10th Cir. 1995); Giddlongs v. Chandler, 979 F.2d 1104, 1108 (5th Cir. 1992). Therefore, the Court will address jurisdictional issues under the APA and 28 U.S.C. § 1361, the Mandamus Statute, concurrently, first as to CIS, then as to the FBI.

The specific inquiry necessary to resolve the Court's jurisdictional question under the Mandamus Statute is whether the CIS has discretion to adjudicate applications for naturalization. The majority of courts have held that "the CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA." Kim v. Ashcroft, 340 F.Supp. 2d 384, 393 (S.D.N.Y. 2004); see also Liu Duan v. Zamberry, No. 06-1351, 2007 U.S. Dist. LEXIS 12697 (W.D. Pa. Feb. 23, 2007) (CIS violated APA by unreasonably withholding naturalization decision); Alkenani v. Barrows, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005) ("[CIS has] a clear duty to process petitioner's application for naturalization within a reasonable time"); Ngwanyia v. Ashcroft, 302 F. Supp. 2d 1076, 1083 (D. Minn. 2004) (CIS

violated APA by unreasonably withholding decision as to legal permanent residency status); Yue Yu v. Brown, 36 F. Supp. 2d 922, 930 (D.N.M. 1999) ("[C]ourts have specifically recognized jurisdiction under § 1331 and the APA to hear challenges to INS delays in processing visa, [residency], and citizen applications"); Fraga v. Smith, 607 F. Supp. 517, 520 (D. Or. 1985) (jurisdiction under APA for challenge to INS delay in processing citizen applications for foreign born citizens). But see Shaikh Afsar Mustafa v. Pasquerell, 2006 U.S. Dist. LEXIS 8047, 2006 WL 488399 (W.D. Tex. Jan. 10, 2006) (siding "with the minority decisions" to conclude court had no jurisdiction to compel CIS to act on delays in adjudicating applications for residency status); Badier v. Gonzales, 475 F. Supp. 2d 1294 (N.D. Ga. 2006) (CIS had no discrete duty to act because there is no statutorily prescribed time period within which the agency must act on an application for naturalization).

However, the "CIS does not have a mandatory duty to take action on an application for naturalization until the FBI has completed its background checks. In fact, Congress has forbidden CIS from taking any action until such checks are completed." Kaplan v. Chertoff, 481 F. Supp. 2d 370, 401 (E.D. Pa. 2007). Specifically, Congress has mandated that "none of the funds appropriated or otherwise made available to [CIS] shall be used to complete adjudication of an application for naturalization unless [CIS] has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed." Id. (citations omitted). Accordingly, "[w]ithout a showing of a mandatory duty to act, there can be no claim under the APA or the Mandamus Statute for unreasonable delay." Id. Thus, in this case, since CIS's failure to process Plaintiff's application for naturalization is solely because it is waiting for the FBI to complete criminal background checks, and Plaintiff has not alleged otherwise, Plaintiff's APA and Mandamus claims

against the CIS are dismissed. See Compl. at ¶ 27; Alkenani, 356 F. Supp. 2d at 657 (finding delay to be reasonable due to the pending FBI background check); Zaytsev v. Gantner, No. 04-7101, 2004 U.S. Dist. LEXIS 28632, at *2 (S.D.N.Y. Sep. 24, 2004) (stating that CIS "is not required to make any determinations until the requisite security checks have been completed") (citations omitted); Zheng v. INS, 933 F. Supp. 338, 341 (S.D.N.Y. 1996) ("The fact that the INS followed a procedure, dictated by statute, of waiting for clearance from the FBI does not amount to a wanton, willful, and reckless delay"); Maldonado-Coronel v. McElroy, 943 F. Supp. 376, 385 (S.D.N.Y. 1996); Ahmed v. Mueller, No. 07-0411, 2007 U.S. Dist. LEXIS 68847, 2007 WL 2726250, at *5-7 (E.D. Pa. Sep. 14, 2007).

2. Claims against the FBI

Plaintiff also alleges that the FBI has unreasonably delayed the processing of his application. As stated by the Supreme Court, the "only agency action that be compelled under the APA is action legally required." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004) (emphasis added). Identifying whether a mandatory duty exists is in essence an inquiry into legislative intent. Legislative intent may be revealed in the plain language of a single enactment, or as is the case often times, by examining several legislative enactments side by side, Slatky v. Amoco Oil Co., 830 F.2d 476 (3d Cir. 1987) (reviewing different statutes that together revealed Congress's intent in use of the phrase "bona fide"), or by examining a legislative scheme as a whole, see Block v. Community Nutrition Institute, 467 U.S. 340, 349 (1984) (congressional intent necessary to overcome the presumption in favor of judicial review of administrative action "may be overcome by inferences of intent drawn from the statutory scheme as a whole"). Thus, an agency's mandatory duty to act may be expressed in a single statute or from several Congressional

enactments which, read together, clearly imply a mandatory duty.

At first glance, there appears to be no single statute that, standing alone, expressly imposes a mandatory duty on the FBI to perform background checks. See Zaytsev, 2004 U.S. Dist. LEXIS 28632, 2004 WL 2251665 at *3 ("The Zaytsevs have pointed to no authority demonstrating that the FBI owes a duty to conduct background checks, and this Court has found no such authority"). However, upon further examination of a number of Congressional enactments, Congress has imposed a mandatory duty on the FBI to perform background checks in these particular circumstances. Recently, the Kaplan Court in this Circuit has persuasively explained the mandatory nature of the FBI's background checks, supported by legislative intent.

> CIS has a mandatory duty to process applications for . . . naturalization, but Congress prohibited CIS from processing such applications until it receives completed background checks from the FBI. Pub. L. No. 105-119, 111 Stat. 2448 (Nov. 26, 1997).
>
> In turn, Congress has also directed that the FBI may "establish and collect fees to process fingerprint identification records and name checks for non-criminal justice, non-law enforcement employment and licensing purposes," such as for immigration matters. Pub. L. No. 101-515, 104 Stat. 2101, 2112 (1990). The Congressional scheme then provides that aliens must submit application fees to CIS, 8 C.F.R. §§ 316.4, 334.2, a portion of which the CIS pays over to the FBI for fingerprint and name checks for that applicant. See 72 Fed. Reg. 4888-01 (proposed Feb. 1, 2007) (to be codified at 40 C.F.R. pt. 103) (proposing increase in application fee to pay, inter alia, "additional funds [to] the FBI for name check costs to enhance services"). Upon completion of the background check, the FBI submits a final report to CIS. Then, and only then, is CIS permitted to consider the application.

Kaplan, 481 F.Supp. 2d at 400-01.

Under these circumstances, where Congress has conditioned CIS's mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI,

9

through CIS, to complete the background checks, the Court finds that Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks.

"While FBI background checks are important and may sometimes require extensive amounts of time, the FBI's delay here does not negate the . . . process [of] the Plaintiffs' applications in a reasonable time . . . . " Haidari v. Frazier, No. 06-3215, 2006 U.S. Dist. LEXIS 89177, at *17 (D. Minn. Dec. 8, 2006).  Especially here, when the fingerprint checks have been processed but expired, the Court find it may be inequitable and unreasonable for Plaintiff to be left without remedy.  As a matter of policy, applicants for citizenship should not be relegated to a state of limbo, leaving them to languish indefinitely.  Kim, 340 F. Supp. 2d at 393.  As such, since the FBI has a mandatory duty to act, the APA requires that the FBI complete the criminal background checks in a reasonable amount of time.  Id.[2]  The issue of what is reasonable is not, however, being decided on this motion to dismiss.

Accordingly, Plaintiff's claims under the APA and Mandamus statute against the FBI will not be dismissed.

## IV. Declaratory Judgment

Plaintiff also seeks a declaration that Federal Defendants' actions are unlawful and constitute violations of legal duties that the Federal Defendants owe to Plaintiff under the INA.  However, Plaintiff has not opposed the Federal Defendants' motion to dismiss on this claim.  Title 28 of the United States Code, Section 2201 does not grant subject matter

---

[2]The Court recognizes that courts nationwide are split on this issue.  In fact, within the Third Circuit, the district courts are split.  See Kaplan, 481 F. Supp. 2d at 370 (finding that the court has jurisdiction over the FBI); but see Omar v. Mueller, 501 F. Supp. 2d 636 (D.N.J. 2007) (finding that FBI does not have a mandatory duty to act); Costa v. Chertoff, No. 07-2467, 2007 U.S. Dist. LEXIS 92666 (D.N.J. Dec. 11, 2007) (same holding, but found that the district court has jurisdiction over the CIS).

jurisdiction to this Court on a claim against the United States, absent some other waiver of sovereign immunity. Ragoni v. United States, 424 F.2d 261, 264 (3d Cir. 1970) (declaratory judgment statute does not of itself provide a ground for federal jurisdiction); McCarthy v. Marshall, 723 F.2d 1034, 1037 (1st Cir. 1983). Since Plaintiff has not properly pled a waiver of sovereign immunity to grant this Court subject matter jurisdiction, this claim is dismissed. Snyder v. Everson, 237 Fed. Appx. 734, 735 (3d Cir. 2007) (District Court lacked subject matter jurisdiction because the United States has sovereign immunity under the Declaratory Judgment Act).

### V.     Due Process

Plaintiff also claims that the Federal Defendants' failure to naturalize him constitutes a violation of procedural and substantive due process. Similarly, Plaintiff has not opposed this issue. The Court finds that these allegations fail to state a claim for relief.

A due process violation may be found only with regard to a "liberty interest" or a "property interest" arising out of the Constitution or state law, which is both "clearly established" and deprived through denial of due process. Kelly Kare, Ltd. V. O'Rourke, 930 F.2d 170, 177 (2d Cir. 1991); Mudric v. Attorney General, 469 F.3d 94, 98 (3d Cir. 2006). Indeed, the Third Circuit has rejected an immigrant's due process claim based on a claim of entitlement to the timely process of his application. Id. The appellant in that case claimed that delays in processing his asylum application prevented him from receiving asylum because country conditions changed during the long delay. Using a traditional analysis, the circuit court held that an immigrant did not have an entitlement to asylum, nor did he have an entitlement based upon having his matter adjudicated in an expeditious manner. Id. at 99. Here, since Plaintiff failed to allege a sufficient property interest or

liberty interest clearly established by the Constitution or state law, his due process claim against the Federal Defendants is dismissed.

## CONCLUSION

For the reasons set forth above, the Federal Defendants' motion is granted in part and denied in part.  Specifically, the APA and Mandamus claims against the CIS are dismissed; however, these claims against the FBI survive the motion; and claims for declaratory judgment and due process are dismissed as to all the Federal Defendants.

Dated: June 26, 2008

                                                          /s/ Freda L. Wolfson
                                                          FREDA L. WOLFSON, U.S.D.J.